SUPREME RULING OF FRATERNAL MYSTIC CIRCLE v. LAWTON
et al.

(Supreme Court, Appellate Division, Fourth Department.   March 8, 1911.)

1. MORTGAGES (§ 316*)—DISCHARGE—RESTORATION—PARTIES ENTITLED TO OB-
JECT.
   The right of a mortgagee to have his mortgage restored, on the ground
   that a discharge was improperly obtained, may not be defeated by for-
   mer owners who had conveyed all their interests in the land prior to
   the execution of a new mortgage to secure bonds issued to pay such
   mortgage and other prior mortgages.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 949–954;
   Dec. Dig. § 316.*]

2. MORTGAGES (§ 209*)—OBLIGATION OF TRUSTEE.
   The trustee, in a mortgage to secure a bond issue to pay debts and
   prior mortgages and to borrow money to transact business, must protect
   the rights of holders of such bonds as are outstanding and received in
   payment of debts and in exchange of bonds issued under prior mortgages.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 466–468;
   Dec. Dig. § 209.*]

3. MORTGAGES (§ 316*)—DISCHARGE—RESTORATION.
   An owner of land subject to three mortgages executed a trust mort-
   gage to secure a bond issue to pay the three mortgages.  The holder of
   one of the mortgages discharged it on receiving bonds under the trust
   mortgage on the condition that the two other mortgages should be sat-
   isfied, which was not done.  The discharge of the mortgage was not re-
   corded.  *Held*, that the holder was entitled to a restoration of the mort-
   gage on restoring what he received in payment thereof.
   [Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 949–954;
   Dec. Dig. § 316.*]

Appeal from Judgment on Report of Referee.

Action by the Supreme Ruling of the Fraternal Mystic Circle
against Ernest W. Lawton and another, as trustees, impleaded with
others.   From a judgment for defendants entered on the report of a
referee to hear, try, and determine, plaintiff appeals.   Reversed, and
new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Thayer, Tuttle & White, for appellant.
W. S. & H. H. Farmer and J. F. La Rue, for respondents.

WILLIAMS, J.   The judgment should be reversed, and a new
trial granted, with costs to appellant to abide event.

The action was brought in equity, to restore a mortgage upon real
property, on the ground that a discharge thereof was improperly ob-
tained, for reasons hereafter referred to, and then to foreclose such
mortgage.   In order to understand and appreciate the questions in-
volved in this appeal, it will be necessary to get the somewhat compli-
cated facts appearing from the record well in mind.   The St. Lawrence
Land & Improvement Company about 1894 became the owner of lands
upon the St. Lawrence river just above Clayton, consisting in all of
about 58 acres of land and plotted the same and laid out streets and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lots thereon.   It was then or subsequently known as "Prospect Park."
About the year 1898 the Land & Improvement Company conveyed to
the St. Lawrence Club a parcel of about 9.4 acres of this land.   This
club erected a large hotel or clubhouse on the property, and gave two
trust mortgages on the property to the National Bank of Syracuse:
One November 10, 1899, to secure a bond issue of $60,000, of which
only about $35,000 are outstanding; the other April 15, 1901 or 1902,
to secure a bond issue of $99,000, for the purpose, among other things,
of paying off the bonds issued under the first mortgage, $35,000.
Only about $34,000 of the bonds under the last mortgage are out-
standing, and those are held by the bank as security for notes amount-
ing to about $22,000.   So that the indebtedness under these two mort-
gages is about $57,000.   February 28, 1900, the Land & Improvement
Company gave a bond and mortgage to the Safety Fund Insurance
Company, to secure payment of $10,000, three years from date, with 6
per cent. semiannual interest.   This is the mortgage involved in this lit-
igation.   It was assigned October 20, 1902, to the American Guild, and
the plaintiff became the owner of it by general assignment of the
Guild May 27, 1907.   This mortgage covered all the Land & Improve-
ment Company's property remaining after the sale of the 9.4 acres to
the St. Lawrence Club, about 49 acres.   After the giving of these three
mortgages, the Prospect Park Company became the owner of the
whole 58 acres, subject to the mortgages.   August 1, 1902, the Pros-
pect Park Company gave a trust mortgage upon the whole property to
the Trust Company of the Republic to secure a bond issue of $125,000.
This last mortgage recited on its face that the bonds issued thereunder
were to be first-mortgage bonds, and that the purpose was to pay off
the debts of the Prospect Park Company and the three above-described
mortgages, and to borrow money to transact its business.

The original trustees under this last mortgage have been succeeded
by others, and now the defendants Lawton and Horsfall are the act-
ing trustees.   The intention of the Prospect Park Company and its
officers in giving this last mortgage was, among other things, to pay
and satisfy the three prior mortgages, so as to make this one a first lien
on the whole property.   After the American Guild became the assignee
of the $10,000 mortgage, there were negotiations between it and the
Prospect Park Company with a view to paying off and discharging
that mortgage by the issue to the Guild of some of the bonds issued
under the $125,000 mortgage, and it was finally agreed that there
should be transferred for that purpose $11,000 of the bonds and $6,000
of the stock of the Prospect Park Company.   May 26, 1903, the Guild
Company sent to the First National Bank of Clayton the bond and
mortgage for $10,000, the assignments thereof to the Guild and the
discharge of the bond and mortgage, duly acknowledged, to be deliv-
ered to the Prospect Park Company upon receipt of the $11,000 of
bonds of the latter company, and the bank was directed to forward
the bonds to the Guild by registered letter or express.   The bank re-
ceived these papers from the Guild May 27, 1903, and forwarded the
bonds, which the Guild acknowledged the receipt of June 10, 1903.
The discharge of the mortgage has never been recorded.   The inten-

tion of the Prospect Park Club was to call in and pay all the indebtedness under the $60,000 and $99,000 mortgages by the issue of the bonds under the $125,000 mortgage or the sale of the same and the use of the proceeds for that purpose. Some of the indebtedness was so paid off, but not all, and therefore those mortgages were never discharged, and the $125,000 mortgage was not a first mortgage, and the bonds issued under it were not first liens as stated therein. The plaintiff wants its $10,000 mortgage restored.

Passing for a moment the question of the technical grounds on which such relief is sought, let us see who is interested in defeating this claim. The St. Lawrence Land & Improvement Company, the St. Lawrence Club, the Prospect Park Club, and the trustees under the $125,000, mortgage have defended the action. There were many other defendants served, but they do not by answers object to the granting of the relief asked for. The St. Lawrence Land & Improvement Company and the St. Lawrence Club are not interested in the question. They had transferred all their interest in the land to the Prospect Park Company before the $125,000 mortgage was given, and the bonds were issued thereunder. The St. Lawrence Club never had any interest in the 49 acres covered by the $10,000 mortgage any way. Its interest was in the 9.4 acres only, and the $60,000 and $99,000 mortgages covered only the 9.4 acres, not the 49 acres at all. The Prospect Company, the mortgagor in the $125,000 mortgage, and the trustees under that mortgage, are the only parties who can object to the granting the plaintiff's relief. There is no dispute but that the intention of the parties was to make the $125,000 mortgage and the bonds issued thereon a first lien on all the property, and the omission to record the discharge of the $10,000 mortgage would seem to indicate a desire to protect the plaintiff in the transaction.

I think there is no difficulty in granting the plaintiff's relief so far as the Prospect Park Company is concerned. The trustees under the $125,000 mortgage are under obligation to protect the rights of the holders of such bonds as are outstanding, and, as already stated, there are some such, at least some who have taken the bonds in payment of debts or in exchange for bonds issued under the $60,000 or $99,000 mortgages. Their rights would of course be affected by the restoration of this $10,000 mortgage as a lien upon the 49 acres prior to the mortgage under which their new bonds were issued. There is no evidence as to the circumstances under which they took their bonds, or whether they were bona fide holders; that is, whether they understood this $10,000 mortgage had been discharged when they took their bonds. So far as the record was any notice to them, it negatived the idea of a discharge of that mortgage. They are not parties to this action. We don't know who they are. They are only represented here, if at all, by the trustees under the mortgage. The Guild was very careless in the transaction. It should have expressly provided in its letter sending the papers that the mortgage should not be discharged until the change in bonds should be fully affected, so as to release the three prior mortgage liens, and leave this latter one a first lien on all the property. It is not improbable that the Guild understood

the two mortgages on the 9.4 acres existed, and that relief could not be afforded the plaintiff, its successor, on the ground of fraud or false representations with reference thereto.   The theory really is that the papers were delivered in trust, the $10,000 mortgage not to be discharged until the bonds issued to the Guild were made first liens.   The referee finds against the plaintiff upon this issue of fact, a conditional delivery of the discharge; but I am hardly inclined to agree with him on this subject.   I think it should be found that the discharge was delivered conditionally, to be used and recorded only when the bonds issued to the Guild were made first liens upon all the property, as therein provided for, and that the holders of the bonds by other parties could not object to relief to plaintiff based on such a finding.   The relief should, of course, be granted only upon the restoration by the plaintiff of all the Guild received in payment of the $10,000 mortgage.

Judgment reversed, and new trial ordered, upon questions of law and fact, before another referee, with costs to appellant to abide event. All concur.